OPINION OF THE COURT
Murray Koenig, J.
The following constitutes the opinion, decision and order of the court.
This case presents the interesting question of whether a judicial order invalidating a search warrant requires the suppression, under the doctrine of collateral estoppel, of all evidence seized in the course of the execution of the warrant vis-a-vis defendants who were not parties to the motion to controvert the warrant.
The defendants stand indicted of felony charges for drug- *396 related offenses and weapons possession. The common denominator underlying the charges is that the items of contraband constituting the physcial evidence of the commission of these crimes was obtained by the police in the course of the execution of a warrant, signed by Justice Louis A. Cioffi of this court on April 2,1979, for the search of a residential building located at 2170 Hughes Avenue in Bronx County.
A thorough search of this multiple dwelling building of 25 apartments and its common area was conducted by the police pursuant to this warrant on April 3,1979. The search yielded contraband consisting of weapons, drugs and drug paraphernalia that was the basis for the arrest of 28 persons found in and about the building. Various felony and misdemeanor charges were filed against these persons. In particular, felony complaints were filed against the four defendants at bar since the contraband discovered within their respective apartments constituted a felony. None of the other defendants were charged with the possession of this contraband.
A motion to controvert the search warrant pursuant to CPL 710.50 (subd 1, par [c]) and CPL 710.60 was then brought in the Criminal Court by defendants’ counsel, Mr. Lewis Alperin, on behalf of all of the 28 persons that had been arrested in the course of the search. Before this motion was decided, the four present defendants were indicted on the charges contained in the afore-mentioned felony complaints that had been filed against them. Their cases were thus removed from the jurisdiction of the Criminal Court to that of the Supreme Court (NY Const, art VI, § 7, subd a). The charges against those remaining defendants that had been charged with felonies were reduced to misdemeanors.
Thereupon, proceedings to hear and determine the motion to controvert the search warrant were held in Criminal Court on behalf of the 24 purported misdemeanant defendants. The motion was opposed by the office of the District Attorney of Bronx County. A hearing on the motion was held before Judge Jerome Becker of the Criminal Court, wherein the People vigorously exercised a full and fair opportunity to litigate the validity of the search warrant. In *397 a written opinion[1] dated September 27,1979[2], Judge Becker granted the motion to controvert the search warrant, finding that it was unconstitutionally overbroad on the ground that a search of all 25 apartments was not supported by probable cause. He accordingly ordered the suppression of the evidence seized under the authority of the warrant.
At that juncture, the People determined that it would be unable to present a prima facie case at trial without the suppressed evidence and moved to dismiss the Criminal Court misdemeanor complaints, which motion was granted. The People failed to exercise its right to appeal from the suppression order to the Appellate Term (CPL 450.20, subd 8; CPL 450.50; CPL 460.10, subd 1, par [a]). An appeal of that order is thus foreclosed at the present time (see People v Thomas, 47 NY2d 37, 43).
The People now wish to proceed with the prosecution of the indictments against the four defendants before the court. The defendants have made a motion for the suppression of the physical evidence against them on the ground that it had previously been judicially determined in the Criminal Court proceedings to which the office of the District Attorney of Bronx County was a party, that the search warrant which led to the police discovery of the evidence was unconstitutionally overbroad and, consequently, invalid. The defendants therefore- seek to have the court invoke the doctrine of collateral estoppel to prevent the People from relitigating the issue of the validity of the search warrant and the resulting necessity for the suppression of the evidence thereby obtained.
The People have opposed the motion on two main grounds: (1) the defendants were not parties to the Criminal Court suppression proceedings, and (2) the evidence against the defendants was not in issue in the Criminal Court proceedings since it was found in the respective apartments occupied by these defendants, and was not the basis of any of *398 the charges pending against the misdemeanant defendants in Criminal Court.
Preliminarily, the court notes that our Court of Appeals has held that the doctrine of collateral estoppel does not apply to an unmixed question of law (Matter of McGrath v Gold, 36 NY2d 406, 411). However, this holding does not pose a barrier to the application of the doctrine in the present case which involves a previous judicial determination that the search warrant in issue was not founded upon probable cause, as “The question of probable cause is a mixed question of law and fact” (People v Oden, 36 NY2d 382, 384).
It was further held in Matter of McGrath v Gold (supra, p 412) that the doctrine of collateral estoppel is inapplicable to suppression orders that are of an interlocutory nature. The suppression order presently in issue is not of an interlocutory nature. Rather, it is a final order dispositive of the case against the misdemeanant defendants due to the failure of the People to exercise their right of appeal and to People’s motion dismissing the charges for lack of evidence to proceed as a consequence of the suppression order. No hope remains of resurrecting those dismissed misdemeanor charges; the prosecution is thus terminated in regard to them. Consequently, this court has determined that this suppression order is a final order that is capable of working a collateral estoppel effect if the other prerequisites of the doctrine are found to exist (cf. United States ex rel. DiGiangiemo v Regan, 528 F2d 1262, 1265, cert den sub nom. Di Giangiemo v Olgiatti, 426 US 950; People v Plevy, 67 AD2d 591, 596-597; People v Scott, 93 Misc 2d 1074,1080).
In civil cases the requirements for the application of the doctrine are twofold: “First, it must be shown that the party against whom collateral estoppel is sought to be invoked had been afforded a full and fair opportunity to contest the decision said to be dispositive of the present controversy. Additionally, there must be proof that the issue in the prior action is identical, and thus decisive, of that in issue in the current action” (Gramatan Home Investors Corp. v Lopez, 46 NY2d 481, 485, citing Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, 71). How *399 ever, a third requirement has been imposed for the application of the doctrine in criminal cases, namely, that “the parties are the same * * * or are so clearly related that they may be deemed as one for these purposes” (People v Berkowitz, 50 NY2d 333, 345; see People v Rasero, 62 AD2d 845. 849).
Applying these criteria to the case at hand, it is conceded by the People that the issue of the constitutional validity of this search warrant is identical to the issue decided against them by the suppression order of the Criminal Court. It is further conceded by the People that this determination is decisive of the issue presented in the current motion to suppress the evidence sought to be introduced against the defendants as the fruits of a seizure made in the execution of the very same warrant. Further there is no question that the People, the party against whom collateral estoppel is sought to be invoked, have had a full and fair opportunity to contest the issue of the validity of the warrant, both in the Criminal Court proceeding wherein the issue was decided against them and by being afforded a statutory right of appeal, which they failed to exercise. The sole obstacle, therefore, to the invocation of the doctrine of collateral estoppel in this case is the fact that the present defendants were not parties to the suppression proceedings in the Criminal Court.
This is an imposing obstacle, but not an insurmountable one. An examination of the criminal cases upon which the People rely, that have imposed the requirement of identity of parties reveals that the context involved an attempt by a defendant to stymie his prosecution by virtue of the fact that a codefendant, who had been tried separately, had been acquitted of charges stemming from the same criminal transaction (see, e.g., People v Berkowitz, supra; People v Rasero, supra; People v O’Dell, 34 AD2d 856; United States v Musgrave, 483 F2d 327, cert den 414 US 1023; People v Legrad, 88 Misc 2d 685).
The rationale for denying collateral estoppel effect in such cases due to the lack of identity of party defendants in both prosecutions was explicated in People v Berkowitz (50 NY2d 333, 346-347, supra) as follows:
*400 “There exist several other persuasive reasons not to apply principles of collateral estoppel so as to allow the acquittal of one defendant to ever serve as a bar to the prosecution of another. In most cases there will be significant disparities in the proof which is available against each of two defendants. For example, one defendant may make admissions which can be used against him at his trial, but which could not be introduced at the trial of a codefendant. To suggest that the People had a fair opportunity to litigate the issue of the confessing defendant’s guilt at the trial of the non-confessing defendant would result in an absurdity. While this example is perhaps rather extreme, it is certainly not uncommon, and the vagaries of the complex rules of evidence applicable to criminal trials will in most cases result in the existence of evidence which may be used against only one of several persons accused of the same crimes. This is especially significant in light of the fact that the People must meet the high burden of proving guilt beyond a reasonable doubt in a criminal prosecution. Hence, the acquittal of one of two defendants means merely that the People were unable to prove his guilt beyond a reasonable doubt; it does not mean that the People will necessarily be unable to prove guilt of the other defendant beyond a reasonable doubt. We see no reason to forbid an attempt to do so.
“Additionally, it will normally be impossible to ascertain the exact import of a verdict of acquittal in a criminal trial. It may well be that the acquittal of one defendant is based on some factor which is not relevant to the guilt or innocence of the other defendant. For example, there exist, several defenses and affirmative defenses which are personal to a particular defendant and would not affect the guilt or innocence of another person accused of the same crime. Moreover, there always exists the possibility that the jury in the first case will have exercised its so-called ‘mercy’ function (see Dunn v United States, 284 US 390, 393) despite instructions to the contrary, especially in a case involving multiple crimes arising from the same transaction.
“For all these reasons, we conclude that a defendant whose own interests were not put directly in issue at the prior trial may not utilize the doctrine of collateral estoppel as a bar to his own prosecution. This is so because the doc *401 trine of collateral estoppel may be used only against a party who has had a full and fair opportunity to previously litigate that same issue, and the People simply do not have a full and fair opportunity to contest the guilt of one defendant at the trial of another defendant.” (Emphasis supplied.)
These justifications for requiring identity of parties in the context of a determination of the issue of guilt by verdict after trial clearly do not pertain to the process of a judicial finding of a lack of probable cause for the issuance of a search warrant. Where, as in the instant case, the written opinion of the Judge granting the suppression motion sets forth his findings of fact and conclusions of law upon which the order of suppression is rendered, there is no room for speculation about the factual and legal issues that were actually decided.
Indisputably, the People have had a full and fair opportunity to litigate the identical issue presently before this court of the validity of the search warrant. No additional facts or circumstances have been raised by the People that have a bearing upon the factual or legal determination made by the Criminal Court in its decision invalidating this search warrant.
An examination of three recent cases reveals a definite judicial trend towards broadening the scope of the operation of the doctrine of collateral estoppel as it applies to suppression orders. In United States ex rel. Di Giangiemo v Regan (528 F2d 1262, supra), the defendant relator had exited a car shortly before it was searched by the police pursuant to an arrest of the driver. The search of the car netted an attaché case containing a gun and jewelry that served as the basis for a Queens County indictment charging the defendant and his codefendant, the driver, with possession of a weapon, and receiving and withholding stolen jewelry;[3] a search of the trunk conducted at the same time turned up burglar’s tools that were the basis of a Nassau County indictment charging the defendant with burglary and grand larceny. The Supreme Court, Queens County, ordered the *402 suppression of the gun and jewelry on the ground that the police lacked probable cause to arrest the driver of the vehicle and that, consequently, there was no legal basis for the search of the car. The court further ordered that the Queens County indictment be dismissed. Subsequently, the defendant was tried in Nassau County upon the Nassau County indictment. The defendant and his Nassau trial counsel were ignorant of the Queens County suppression order and made no suppression motion in regard to the burglar’s tools found in the trunk of the car that were introduced into evidence at the Nassau County trial. The defendant was convicted of the charges based upon the material evidence of the burglar’s tools. The defendant learned of the Queens County suppression order after his conviction and sought a writ of coram nobis. This application was denied by the trial court on the ground that the defendant had waived beyond recall a meritorious collateral estoppel bar to the introduction of the burglar’s tools as illegally seized evidence by failing to raise a suppression issue or to invoke collateral estoppel during the Nassau County prosecution. The Appellate Division of the Second Judicial Department affirmed (47 AD2d 661) on the apparently different ground that the burglar’s tools, which had been found in the trunk, were not the fruit of the same search and seizure that had been invalidated by the Queens County suppression order.
Leave to appeal was denied by the Court of Appeals. The defendant then sought habeas corpus relief in the Federal courts. The United States Circuit Court of Appeals for the Second Circuit held that collateral estoppel based upon the Queens suppression order would not merely be appropriate against the Nassau County District Attorney’s office, it would be constitutionally required as a matter of due process of law to protect the defendant from relitigation in Nassau of the suppression issue. Of especial significance to our own case, the court went on to find, contrary to the decision of the Appellate Division, that there was no question that the Queens County suppression order was determinative of the identical issue of probable cause involved in the search of both the interior of the car and its trunk. The two searches were therefore held not to be severable for purposes of the collateral estoppel effect of the lack of probable *403 cause determination, even though the Queens County suppression order had been limited to the search of the car’s interior and had not addressed itself to the search of the trunk. However, the Second Circuit denied the petition for habeas corpus, relief due to the failure of the defendant to raise the collateral estoppel issue at his Nassau County trial.
In People v Scott (93 Misc 2d 1074, supra), a defendant had been arrested in The Bronx pursuant to information leading the police to believe he had committed an armed robbery in The Bronx. In the course of making the arrest, a gun was recovered from the defendant’s person. While under arrest, the defendant made incriminating statements concerning a double murder and robbery he had committed in New York County a month before. He was indicted in New York County for murder and in Bronx County for possession of a weapon. A hearing was conducted in New York County upon the defendant’s motion to suppress his statements on the purported ground that The Bronx arrest had not been founded on probable cause and that the statements were therefore the “fruit of the poisoned tree”. The New York County suppression court denied the defendant’s motion, finding there was probable cause for the defendant’s arrest. The defendant was then tried and convicted of the New York County homicide charge. Subsequently, he was prosecuted on The Bronx indictment on the weapon possession charge. The defendant moved for the suppression of the gun on the identical ground that the police had lacked probable cause to arrest him. The court, in a scholarly opinion by Justice Eggert, held that the People were entitled to have the defendant collaterally estopped from relitigating • the probable cause issue that had been decided against him in the New York County suppression proceeding. It found collateral estoppel to be applicable since there existed both an identity of issue previously decided and a full and fair opportunity by the defendant to contest the issue, in the previous proceeding. It noted that (p 1079): “Although collateral estoppel in a criminal case usually involves elements of crimes (Ashe v Swenson, 397 US 436, supra) there is no reason in logic or law to except suppression issues from the doctrine. (See 46 S Cal L Rev 922, 957-959.) The unnec *404 essary relitigation of suppression issues, especially where this would involve the repetition of an evidentiary hearing, has long been disfavored (see People v Bryant, 37 NY2d 208; People v Garrow, 52 AD2d 982; People v Reingold, 44 AD2d 191; People v Buthy, 38 AD2d 10.) ”
Similarly, in People v Plevy (67 AD2d 591, supra), a defendant was indicted in Kings County on a murder charge and in Nassau County for burglary and petit larceny. Incriminating physical evidence linking him to all of these charges was found by the police by means of search war-ants that had been issued in the respective counties as a result of information concerning observations made of the contents of the defendant’s room by a Nassau County detective. In the Kings County prosecution the defendant moved for the suppression of the evidence upon the ground that the Nassau County detective had not been given permission by the defendant to accompany him to his room where he had observed the incriminating evidence and therefore the search warrant was the tainted product of an illegal police trespass. The Kings County suppression court denied the defendant’s motion on the ground that he had expressly consented to the detective’s request to accompany him to his room. The defendant was then tried and convicted of the murder charge. Subsequently, the defendant was prosecuted on the Nassau County indictment. He moved for the suppression of the physical evidence on the identical ground he had asserted and that had been decided against him in the Kings County proceeding. The suppression motion was denied on the ground that the defendant was collaterally estopped from relitigating the issue that had been decided against him in Kings County. The defendant was thereupon tried and convicted of the Nassau charges. The defendant’s conviction was affirmed by the Appellate Division of the Second Judicial Department. The court held that collateral estoppel had properly been invoked against the defendant, as the following three essential criteria had been met (p 595) : “(1) that there is an identity of issues in both proceedings; (2) that the issue was necessarily decided in the prior proceeding; and (3) that the party against whom the prior ruling is sought to be invoked has had a full and fair opportunity to contest that issue.” (Citing Schwartz v Pub *405 lic Administrator of County of Bronx, 24 NY2d 65, 71, supra.) The Appellate Division thus held the issue of the collateral estoppel effect of suppression decisions to be governed by the same criteria controlling the application of the doctrine in civil cases. An identity of parties requirement was rejected in favor of the more flexible criterion that the party against whom estoppel is sought has had a full and fair opportunity to contest the issue in the prior proceeding.[4]
The rejection of an identity of parties defendant requirement under the present circumstances is further borne out by the holding in People v Lo Cicero (14 NY2d 374, 380) that: “Collateral estoppel, as distinguished from the principle of double jeopardy, arises not so much from concern for the peace of mind of the defendant as from a long-recognized equitable reaction against allowing a party to relitigate issues which have already been decided against him * * * Accordingly, while there is some flexibility in regard to those who may invoke collateral estoppel by judgment * * * it is essential that the party sought to be estopped be identical to, or a strict privity with, the party who previously had his day in court”.
The People have contended that it would be unfair to collaterally estop them from relitigating the suppression issue herein as, in the event they had prevailed in the Criminal Court, the denial of suppression could not now be asserted against these defendants who were not a party to that proceeding. Mutuality of estoppel is thus lacking. However, the short answer to this is that it has been established that the lack of mutuality is not a bar to a defendant’s collaterally estopping the prosecution from relitigating issues previously adjudged against them (Ashe v Swenson, 397 US 436, 443; United States v Kramer, 289 F2d 909,913).
The People have had their day in court to attempt to establish the validity of this search warrant; they are not *406 entitled to another. (Cf. People v Reisman, 29 NY2d 278, 285.)
Based upon all of the foregoing reasons, the court finds the People are collaterally estopped from relitigating the issue of the constitutionality of the search warrant that was decided against them by the order of suppression of the Criminal Court. Accordingly, the defendant’s motion to controvert the search warrant and to suppress the evidence seized in its execution is granted.

. Although the caption of this opinion included the names of the four defendants at bar, this inclusion was a mere oversight having no operational effect as it is uncontested that the Criminal Court had been divested of jurisdiction over them upon their indictment.

. Reported as People v Pinto (NYLJ, Oct. 19, 1979, p 7, col 3).

. The Queens indictment further charged the defendants with receiving and withholding a stolen automobile.

, To the extent that the decision in People v Notrica (69 Misc 2d 591, revg 66 Misc 2d 945) would appear to require an identity of parties as a prerequisite for imposing collateral estoppel as a bar to the relitigation of a suppression issue, it has apparently been overruled sub silentio by People v Plevy (supra).